**MAZIE SLATER KATZ & FREEMAN, LLC**
Matthew R. Mendelsohn (NJ SBN 015582005)
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey (CA SBN 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

*Attorneys for Plaintiff and Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HERBERT WALTERS, RICK HILL, and BARRY WOLFORD, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> PRO CUSTOM SOLAR LLC, D/B/A MOMENTUM SOLAR <br><br> Defendant. | No.: <br><br> **CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs Herbert Walters, Rick Hill, and Barry Wolford bring this action against Pro Custom Solar LLC doing business as Momentum Solar ("Momentum" or "Defendant"), by and through their attorneys, individually and behalf of all others similarly situated ("Class Members"). Plaintiffs' allegations as to their own actions are based on personal knowledge. The other allegations are based on his counsel's investigation, and information and belief.

## INTRODUCTION

1.      Plaintiffs, individually and as a class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), the Florida Do Not Call Act, § 501.059, *et seq*., and the Florida Telemarketing Act, § 501.616, Fla. Sta., *et seq*. (collectively, the Florida Do Not Call Act and Florida Telemarketing Act will be referred to herein as the "FTCPA") for unsolicited telemarketing calls made by or on behalf of Defendant. Plaintiffs, individually, and for Class Members, seek an injunction and an award of statutory damages to Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

2.      Plaintiff Herbert Walters is a natural person.  Mr. Walters was a resident of Lauderhill, Florida at all times during the events alleged in the Complaint.  At all relevant times Mr. Walters was the user, subscriber, owner and possessor of the cellular telephone number (352) 777-XXXX.  Mr. Walters's phone number has been registered on the National Do Not Call registry since at least May 7, 2019.  Mr. Walters registered his number on the National Do Not Call registry specifically because he did not want to receive unsolicited telemarketing call on his cellphone.  Mr. Walters has, during all times relevant herein, resided in an apartment building that he does not own, and has absolutely no use for or interest in solar equipment.  Mr. Walters has never looked for or researched solar equipment online, or otherwise.  Mr. Walters has never engaged in any business with Defendant Momentum Solar, and does not nor has he ever had a business relationship with Momentum Solar.  Mr. Walters has never provided consent to Momentum Solar – implied, oral, written, or otherwise – to call him for any reason.  Despite being listed on the National Do Not Call registry since May 2019, Momentum has placed telemarketing calls to Mr. Walters'

cellphone number hundreds, and possibly thousands of times over the course of the past year, which have continued into 2022.  Whenever Mr. Walters answered a call from Momentum Solar, there would be a brief pause and then a connection to a live representative.  Momentum Solar's call representative would then proceed to solicit his business for solar equipment, trying to sign Mr. Walters up as a customer.  Mr. Walters has repeatedly asked Momentum Solar's representatives to stop calling him, and to place him on their do not call list.  Despite Momentum Solar's employees stating at times that they would indeed stop calling him in the future, the calls have persisted incessantly.  The calls to Mr. Walters' cellphone from Momentum Solar have been an extreme nuisance, and have been a repeated invasion of his privacy.

3.      Plaintiff Rick Hill is a natural person.  Mr. Hill was a resident of Titusville, Florida at all times during the events alleged in the Complaint.  At all relevant times Mr. Hill was the user, subscriber, owner and possessor of the cellular telephone number (321) 301-XXXX.  Mr. Hill's phone number has been registered on the National Do Not Call registry since at least April 2, 2017.  Mr. Hill registered his number on the National Do Not Call registry specifically because he did not want to receive unsolicited telemarketing call on his cellphone.  Mr. Hill has never engaged in any business with Defendant Momentum Solar, and does not nor has he ever had a business relationship with Momentum Solar.  Mr. Hill has never provided consent to Momentum Solar – implied, oral, written, or otherwise – to call him for any reason.  Despite being listed on the National Do Not Call registry since April 2017, Momentum has placed telemarketing calls to Mr. Hill's cellphone number dozens, and possibly hundreds of times over the course of the past year, which have continued into 2022.  The calls always show up as Momentum Solar on his cellphone's Caller ID.  Whenever Mr.

Hill picks up the phone, however, the call drops.  Typically, calls from Momentum Solar ring once, and then drop.  It is also clear that Momentum Solar is using technology to obscure the source of the phone calls, using call spoofing technology that makes it appear that the call is coming from a local area code.  Virtually all calls from Momentum to Mr. Hill have come from 407-666-XXXX, an Orlando, Florida area code, with the last four numbers appearing random and changing between the calls.  Whenever he would call the number back, he would hear a message saying that the phone number is invalid or does not exist.  The calls to Mr. Hill's cellphone from Momentum Solar have been an extreme nuisance, and have been a repeated invasion of his privacy.

4.      Plaintiff Barry Wolford is a natural person.  Mr. Wolford was a resident of Orlando, Florida at all times during the events alleged in the Complaint.  At all relevant times Mr. Wolford was the user, subscriber, owner and possessor of the cellular telephone number (407) 844-XXXX.  Mr. Wolford's phone number has been registered on the National Do Not Call registry since at least October 18, 2018.  Mr. Wolford registered his number on the National Do Not Call registry specifically because he did not want to receive unsolicited telemarketing call on his cellphone.  Mr. Wolford has, during all times relevant herein, resided in an apartment building that he does not own, and has absolutely no use for or interest in solar equipment.  Mr. Wolford has never looked for or researched solar equipment online, or otherwise.  Mr. Wolford has never engaged in any business with Defendant Momentum Solar, and does not nor has he ever had a business relationship with Momentum Solar.  Mr. Wolford has never provided consent to Momentum Solar – implied, oral, written, or otherwise – to call him for any reason.  Despite being listed on the National Do Not Call registry since October 2018, Momentum has placed telemarketing calls to Mr. Wolford's

cellphone number dozens, and possibly hundreds of times over the course of the past year, which have continued into 2022.  The calls typically show up as Momentum Solar or "Energy Services" on his cellphone's Caller ID.  For instance, on January 14, 2022, when Mr. Wolford picked up a call that showed up as "Energy Services" on his Caller ID (which was already the fourth call from Momentum Solar on that day), Momentum Solar's sales representative tried to sell him solar equipment and specifically stated that he worked for a company called "Momentum Solar."  When Mr. Wolford asked, the sales representative stated that he was calling from New Jersey (not locally, as the Caller ID made it appear), where Momentum Solar is headquartered and runs its operations.  Mr. Wolford informed the sales representative that he is on the national DNC registry, and asked to not be called again in the future.  It is also clear that Momentum Solar is using technology to obscure the source of the phone calls, using call spoofing technology that makes it appear that the call is coming from a local area code.  Virtually all calls from Momentum to Mr. Wolford have come from 407-707-XXXX, an Orlando, Florida area code, with the last four numbers appearing random and changing between the calls.  The calls to Mr. Wolford's cellphone from Momentum Solar have been an extreme nuisance, and have been a repeated invasion of his privacy.

5.      Defendant Momentum is, and at all relevant times was, a limited liability company organized under the laws of the State of New Jersey, with a principal place of business located at 325 High Street, Metuchen, New Jersey, and is a "person" as defined by 47 U.S.C. §153 (39).  Momentum Solar is in the business of selling solar equipment, and primarily operates and makes sales through the placement of telemarketing calls in violation of the TCPA and the FTCPA as alleged herein.  Momentum Solar places all such telemarketing calls at issue in this action using an automated system for the selection or

dialing of telephone numbers.

## JURISDICTION AND VENUE

6.  The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *Cf. Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

7.  This Court has personal jurisdiction over Momentum, because it is a New Jersey Corporation, maintains its headquarters in New Jersey, does business in the State of New Jersey, and because the wrongful acts alleged in this Complaint were committed in or emanated from New Jersey.

8.  Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9.  In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368 (2012) ("The Act bans certain invasive telemarketing practices").

10. The Federal Communications Commission ("FCC") has promulgated regulations under the TCPA which also require that sellers and telemarketers maintain an "internal do-not-call list" ("IDNC" list) — i.e., a "list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]" — and further prohibits sellers from

"initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). Cf. 47 U.S.C. § 227(b)(1). Here, Defendant both does not adequately maintain a list of persons that request not to receive telemarketing calls, and does not consistently or routinely honor requests not to be call even for those persons – like Plaintiff Walters and other class members – that request to be added to the do not call list.

11.     Further, the TCPA makes it unlawful for any person or entity to initiate any telephone solicitation to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Though the TCPA provides some limited exceptions to this rule, Defendant here clearly does not qualify. *See id*. § 64.1200(c)(2)(i)(A)-(D). As alleged herein, each of the three named Plaintiffs have been on the national DNC registry for years, and yet Defendant has called each of them dozens, if not hundreds, of times. Had Defendant scrubbed its call list or checked it against the national DNC registry even once within the past few years, it would have found each of Plaintiffs' phone numbers and known not to call them. Accordingly, Defendant is either willfully and knowingly violating the TCPA, or does not use a process to scrub phone numbers on the national DNC registry from its telemarketing campaigns.

12.     The TCPA also makes it unlawful to "[d]isconnect an unanswered

telemarketing call prior to at least 15 seconds or four (4) rings." *Id*. § 64.1200(a)(6). Defendant violates this provision by routinely and systematically placing calls that drop "prior to at least 15 second or four (4) rings."

13.     The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

14.     The FCC has also confirmed that a party can be vicariously liable for autodialed calls that are placed by third parties in violation of Section 227(b) of the TCPA and that subsection's corresponding regulations. *See In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013). *Accord, Jenkins v. National Grid USA*, No. 15-cv-1219, 2017 WL 1208445, *3 (E.D.N.Y. Mar. 31, 2017); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, 2014 WL 3014874, *3 (E.D.N.Y. July 3, 2014).

15.     Momentum's calls forced Plaintiffs and other similarly situated class members to live without the utility of their cellular phones by occupying their cellular telephones with one or more unwanted calls, causing a nuisance and lost time.

16.     Plaintiffs are informed and believe and here upon alleges, that the calls were made by Momentum and/or its agent(s), with Momentum's permission, knowledge, control and for Momentum's benefit.

17.     Momentum's calls annoyed and frustrated Plaintiffs, distracted Plaintiffs, and invaded Plaintiffs' privacy.

**<u>FLORIDA TCPA</u>**

18.     Florida's Do Not Call Act and Telemarketing Act are in many ways broader than the federal TCPA, providing even stronger protections to recipients of telemarketing calls in Florida than the TCPA.

19.     Like the TCPA, FTCPA prohibits making telemarketing calls to persons that requested to not be called in the future: "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission."  § 501.059(5).

20.     Further, the FTCPA is broader than the TCPA in its definition of the types of telephone systems through which telemarketers are not allowed to place any solicitation calls without prior express consent.  The FTCPA provides that a "person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  § 501.059(8)(a).  Unlike the TCPA, there is no mention of random number generation, and it is not required under the FTCPA for an autodialer to use a random or sequential number generator.  As alleged herein, Momentum Solar used an automated system for the selection or dialing of telephone numbers to call Plaintiffs and class members.

21.     Further, the FTCPA prohibits call spoofing and obscuring the identity of the

caller, both of which Momentum Solar employs on a regular basis as alleged herein: "It shall be unlawful for any person who makes a telephonic sale call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. § 501.059(8)(b)

22.     Under the FTCPA, "[t]here is a rebuttable presumption that a telephonic sales call made to any area code in [Florida] is made to a Florida resident or to a person in [Florida] at the time of the call." § 501.059(8)(d).

23.     The FTCPA allows Plaintiffs and class members to recover actual damages or $500, whichever is greater, and allows a court to treble the award if the courts find that the violation is knowing or willful. § 501.059(10)(a),(b). The FTCPA also provides for attorneys' fees to the prevailing party. § 501.059(11)(a).

24.     Under § 501.616(6)(b), the FTCPA prohibits "[m]ore than three commercial telephone solicitation calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call." Here, as discussed above, Momentum Solar routinely violates this provision, as it made four telemarketing calls to Plaintiff Wolford within a 24 hour period.

25.     The FTCPA also states that "a commercial telephone seller or salesperson making a commercial telephone solicitation call may not: (a) Intentionally act to prevent transmission of the telephone solicitor's name or telephone number to the party called when the equipment or service used by the telephone solicitor is capable or creating and transmitting the telephone solicitor's name or telephone number. (b) Use technology that deliberately displays a different caller identification number than the number the call is originating from to

conceal the true identity of the caller.  A commercial telephone seller or salesperson who makes a call using such technology commits a misdemeanor of the second degree."  § 501.616(7)(a),(b).  As discussed herein, Momentum Solar routinely spoofs and conceals the number from which it is calling, and often conceals its name from call recipients' Caller IDs.

### CLASS ACTION ALLEGATIONS

26.    **Class Definitions**: Plaintiff brings this Complaint against Defendant, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following Classes:

> **National Telemarketing Class:**  All persons in the United States who received two or more telemarketing calls within any 12-month period on their residential telephone number from Defendant or its agents who never provided their telephone number to Defendant or any of its agents, from January 18, 2018 through the date the Court certifies the class.

> **National DNC Class:** All persons in the United States whose numbers are listed on the national do-not-call registry, and received two or more telemarketing calls within any 12-month period from Defendant or its agents to their residential telephone number 90 or more days after the telephone number was listed on the national do-not-call registry, from January 18, 2018 through the date the Court certifies the class.

> **Internal Do Not Call Class ("IDNC Class"):** All persons in the United States who received two or more telemarketing calls within any 12-month period from Defendant or its agents at least thirty-one (31) days after requesting to be placed on Defendant's do not call list or requesting that Defendant stop calling them at any time from January 18, 2018 through the date the Court certifies the class.

> **National Dropped Call Class:** All persons in the United States who received two or more telemarketing calls within any 12-month period from Defendant or its agents on their residential telephone number, that were disconnected without the person answering the call prior to at least 15 seconds or four rings at any time from January 18, 2018 through the date the Court certifies the class.

> **Florida Telemarketing Subclass:** All Florida residents that received a telephonic sales call from Defendant or its agents using an automated system for the selection or dialing of telephone

numbers at any time from July 1, 2021 through the date the Court certifies the class for whom Defendant does not possess a written agreement that (1) bears the signature of the called party, (2) clearly authorizes Defendant or its agents to place telephonic sales call using an automated system for the selection or dialing of telephone numbers, (3) includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered, and (4) includes a clear and conspicuous disclosure informing the called party that (a) by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and (b) he or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

**Florida Do Not Call Subclass:** All Florida residents who received a telephonic sales call from Defendant or its agents after requesting to be placed on Defendant's do not call list or requesting that Defendant stop calling them at any time from July 1, 2021 through the date the Court certifies the class.

27.     Excluded from the classes is Defendant, its affiliates, employees, officers and directors, persons or entities, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

28.     There is a well-defined community of interest in the litigation and the classes are readily ascertainable.

29.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or

control.

30.     Typicality: Plaintiffs' claims are typical of the claims of the other members of the classes. Plaintiffs are not different in any relevant way from any other member of the classes, and the relief they seek is common to each class.

31.     Commonality: Plaintiffs' and Class Members' experiences receiving calls by or on behalf of Momentum are common. They received multiple, incessant, uninvited robocalls for the purposes of marketing Momentum's products or services. The calls were made irrespective to whether Plaintiffs and Class Members were on the National Do Not Call Registry, Internal Do Not Call List and their requests that the calls cease.

32.     In addition, common questions of fact and law exist as to all members of the classes and predominate over the questions affecting only individual members of the classes. Identification of the individuals who qualify as a member of the classes will be sufficient to establish liability to the class member. The predominant common questions include:

a.  Whether Defendant and/or its agents are engaged in telemarketing and the calls at issue were made for the purpose of solicitation;

b.  Whether Defendant's dialing equipment is an automated system for the selection or dialing of telephone numbers;

c.  Whether Defendant and/or its agents made telemarketing calls to phone numbers on the national DNC registry 90 or more days after such numbers were placed on the registry;

d.  If an agent was utilized, whether Defendant is vicariously liable for its agents' calls;

e.  Whether Defendant and/or its agents had legally effective consent to place telemarketing calls to Plaintiffs and class members;

f.  Whether Defendant and/or its agents instituted procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity;

g.  Whether Plaintiffs and Class Members are entitled to damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiffs and Class Members are entitled to treble damages;

h.  Whether Plaintiffs and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

33.    <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and TCPA class actions, and Plaintiffs intend to prosecute this action vigorously.

34.    <u>Predominance and Superiority</u>: The classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class Members to individually obtain effective relief from Defendant's misconduct. Even if Class Members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

35.    <u>Generally Applicable Policies</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to

the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class as a whole. The policies of the Defendant challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiffs.

36.     <u>Injunctive Relief is Appropriate</u>: Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiffs and Class Members for which they have no adequate remedy at law. In particular, Plaintiffs seeks the following specific relief:

    a.  Require Defendant to retain call records;

    b.  Require Defendant to retain proof of any express consent to receive telemarketing calls;

    c.  Require Defendant and its agents to cease making telemarketing calls to any person that has not provided express consent to receive such calls;

    d.  Require Defendant to maintain an internal do not call list and ensure that neither Defendant, nor its agents, initiates phone calls to any person on that list;

    e.  Prohibit Defendant from hiring telemarketers that do not comply with State regulations to maintain a valid license, registration, and/or bond to call customers/prospects residing in that state.

    f.  Prohibit Defendant from hiring telemarketers that do not comply with Federal or State law and regulations.

The presence of Plaintiffs and other class members' information on Defendant's lead lists exposes them to further calls from Defendant and their agents in the future.

## VIOLATIONS ALLEGED

### COUNT I
**Violations of the TCPA, 47 U.S.C. § 227 (c)(5)**
**(Individually, and on Behalf of the National Telemarketing Class and the IDNC Class)**

37.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint. All three Plaintiffs assert these claims on behalf of themselves and members of the National Telemarketing Class.  Plaintiff Walters also brings this claim on behalf of himself and members of the IDNC Class.

38.     47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised."

39.     The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of [e.g., 47 C.F.R. § 64.1200(d).]" 47 U.S.C. § 227(c)(5). *See also* 47 C.F.R. § 64.1200(d)(3) (liability for company specific DNC list violations).

40.     Defendant and its agents made more than one unsolicited telephone call to Plaintiffs and members of the National Telemarketing Class and IDNC class within a 12-month period in violation of 47 C.F.R. § 64.1200(d), and made such calls more than 31 days after Plaintiff Walters and members of the IDNC class requested to be placed on Defendant's internal do not call list.

41.     Defendant did not institute minimum procedures required under 47 C.F.R. § 64.1200(d); Defendant consistently fails to honor the requests of Plaintiff Walters and other individuals to stop calling, and specifically to place their name and telephone number on Defendant's internal do not call list and to otherwise maintain an adequate do not call policy required under 47 C.F.R. § 64.1200(d).

42.     Defendant and its agents violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to wireless and wireline residential telephones of Plaintiffs and members of the classes without instituting minimum procedures required under 47 C.F.R. § 64.1200(d).

43.     Defendant willfully violated 47 C.F.R. § 64.1200(d). Defendant knew that it and its agents failed to institute minimum procedures for maintaining a list of persons who request

not to receive telemarketing calls made by or on behalf of Defendant and that they repeatedly ignored and/or refused to honor Plaintiff Walters' and class members' requests to be placed on an IDNC list.

44.     Plaintiffs, individually, and on behalf of the other members of the classes, seek to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227 (c)(5)**
**(Individually, and on Behalf of the National Do Not Call Class)**

45.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint. All three Plaintiffs assert these claims on behalf of themselves and members of the National Do Not Call Class.

46.     47 C.F.R. § 64.1200(c)(2) makes it unlawful for any person or entity to initiate any telephone solicitation to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.  Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

47.     Though the TCPA provides some limited exceptions to this rule, Defendant here clearly does not qualify.  *See id.* § 64.1200(c)(2)(i)(A)-(D).  As alleged herein, each of the three named Plaintiffs have been on the national DNC registry for years, and yet Defendant has called each of them dozens, if not hundreds, of times.  Had Defendant scrubbed its call list or checked it against the national DNC registry even once within the past few years, it would have found each of Plaintiffs' phone numbers and known not to call them.  Accordingly, Defendant is either willfully and knowingly violating the TCPA, or does

not use a process to scrub phone numbers on the national DNC registry from its telemarketing campaigns.  These violations are not the result of "error," as required for the exceptions to apply under § 64.1200(c)(2), but are rather the result of a systemic indifference to the TCPA and federal regulations promulgated thereunder.  The violations were made willfully and with knowledge of their illegality.

48.     Defendant and its agents made more than one unsolicited telephone call to Plaintiffs and members of the National Do Not Call Class within a 12-month period in violation of 47 C.F.R. § 64.1200(d).  *See* 47 U.S.C. § 227(c)(5) (private right of action based on violations of the regulation).

49.     Plaintiffs, individually, and on behalf of the other members of the National Do Not Call Class, seek to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant.

### COUNT III
**Violations of the TCPA, 47 U.S.C. § 227 (c)(5)**
**(Individually, and on Behalf of the National Dropped Call Class)**

50.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint. Plaintiff Hill assert these claims on behalf of himself and members of the National Dropped Call Class.

51.     The TCPA makes it unlawful to "[d]isconnect an unanswered telemarketing call prior to at least 15 seconds or four (4) rings."  *Id*. § 64.1200(a)(6).  Defendant violates this provision by routinely and systematically placing calls that drop "prior to at least 15 second or four (4) rings."  Defendant knows that its automated system for placing calls routinely disconnects unanswered telemarketing calls prior to at least 15 seconds or four rings, and continues making such calls with knowledge and intent.

52.     Defendant and its agents made more than one unsolicited telephone call to Plaintiff Hill and members of the National Dropped Call Class within a 12-month period in violation of 47 C.F.R. § 64.1200(d).  *See* 47 U.S.C. § 227(c)(5) (private right of action based on violations of the regulation).

53.     Plaintiff Hill, individually, and on behalf of the other members of the National Dropped Call Class, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant.

<div align="center">

**COUNT IV**
**Violations of the § 501.059(8)(a), Fla. Stat.**
**(Individually, and on Behalf of the Florida Telemarketing Subclass)**

</div>

54.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint. All three Plaintiffs assert these claims on behalf of themselves and members of the Florida Telemarketing Subclass.

55.     The FTCPA provides that a "person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  § 501.059(8)(a).

56.     Defendant and its agents knowingly and willfully called Plaintiffs and members of the Florida Telemarketing Subclass in violation of 501.059(8)(a) using an automated system for the selection or dialing of telephone numbers.  Further, for Plaintiffs and members of the Florida Telemarketing Subclass, Defendant does not possess a written agreement that (1) bears the signature of the called party, (2) clearly authorizes Defendant or its agents to place telephonic sales call using an automated system for the selection or dialing of telephone

numbers, (3) includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered, and (4) includes a clear and conspicuous disclosure informing the called party that (a) by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and (b) he or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

57.     Plaintiffs, individually, and on behalf of the other members of the Florida Telemarketing Subclass, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under § 501.059(10)(a).  They also seek to recover attorney's fees and costs under § 501.059(11)(a).

<div align="center">

**COUNT V**
**Violations of the § 501.059(5), Fla. Stat.**
**(Individually, and on Behalf of the Florida Do Not Call Subclass)**

</div>

58.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint. Plaintiff Walters asserts these claims on behalf of himself and members of the Florida Do Not Call Subclass.

59.     "A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission." § 501.059(5).

60.     Plaintiff Walters and members of the Florida Do Not Call Subclass requested to

Defendant and its agents that they no longer wished to receive outbound calls from Momentum, but Defendant and its agents continued making such calls knowingly and willfully.

61.     Plaintiff Walters, individually, and on behalf of the other members of the Florida Do Not Call Subclass, seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under § 501.059(10)(a). They also seek to recover attorney's fees and costs under § 501.059(11)(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of himself and members of the Classes, respectfully requests that this Court enter judgment and order in their favor against Defendant as follows:

a.     An order certifying the proposed Classes, designating Plaintiffs as named representatives of the Classes, and designating the undersigned as Class Counsel;

b.     Judgment against Defendant, and in favor of Plaintiffs and the other Class Members in the amount of $500 per violation of the TCPA as proven at trial;

c.     Judgment against Defendant, and in favor of Plaintiffs and the other Class Members in the amount of $1,500 per knowing and willful violation of the TCPA as proven at trial;

d.     Judgment against Defendant, and in favor of Plaintiffs and the other Class Members in the amount of $500 per violation of the FTCPA as proven at trial;

e.     Judgment against Defendant, and in favor of Plaintiffs and the other Class Members in the amount of $1,500 per knowing and willful violation of the FTCPA as proven at trial;

f.     Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA and FTCPA;

g.     An award of attorneys' fees and costs, as allowed by law;

a.  An award of pre-judgment and post-judgment interest, as provided by law;

b.  Leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

c.  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all claims and issues so triable.


Dated:  January 19, 2022


By:  _____
Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303
e-mail: mrm@mazieslater.com

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey (CA SBN 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ykrivoshey@bursor.com

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

I hereby further certify that the matter in controversy is the subject of another action pending in this court, entitled *Niemczyk v. Pro Custom Solar, LLC*, No.: 2:19-cv-7846-ES-MAH.

<div style="margin-left:40%">

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff

_____
MATTHEW R. MENDELSOHN

</div>

Dated: January 19, 2022